**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 13, 2012

# In the Court of Appeals of Georgia

A12A0496. MCFALLS v. ONSAGER et al.                    BO-023

BOGGS, Judge.

Ralph McFalls, the paternal great uncle of now one-year-old A. C., appeals from a superior court order granting custody of the child to her maternal great aunt and uncle Karen and Curtis Onsager. Because we find no abuse of the superior court's discretion in the custody determination, we affirm.

In adjudicating the custody of a minor child "where neither party seeking custody is a parent as defined by Georgia law, a determination of custody is to be made according to the best interest of the child." (Citation and punctuation omitted.) *Stills v. Johnson*, 272 Ga. 645, 649 (2) (533 SE2d 695) (2000). When the superior court has exercised its discretion in making this determination, "this court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any

evidence to support the trial court's finding, this court will not find there was an abuse of discretion." (Citations and punctuation omitted.) *Reed v. Reed*, 289 Ga. 193 (710 SE2d 138) (2011).

The record reveals that the parents of A. C. asked McFalls, A. C.'s paternal great uncle, to care for A. C. until they could get "a place to live, . . . a better job, and could provide for her." McFalls received the child on February 17, 2011, when she was two months old. When the Department of Family and Children Services began investigating the parents, they consented to McFalls obtaining temporary guardianship of A. C. On March 8, 2011, a probate judge signed temporary letters of guardianship naming McFalls as A. C.'s guardian.

Before A. C.'s birth, her maternal great aunt and uncle, the Onsagers helped support A. C.'s older brother, born April 28, 2005. The parents "couldn't deal with him, couldn't handle him; couldn't afford him; couldn't take care of him," and often left the brother at the Onsagers' home sometimes for months at a time. The Onsagers adopted the older brother prior to A. C.'s birth. When they became aware that the mother was incarcerated and inquired about the whereabouts of A. C. shortly after her birth, they discovered that the child was in the care of McFalls. The decided to seek

custody of her to "give her stability and to keep her with her sibling," and to allow her to bond with a mother figure.

On May 16, 2011, the Onsagers filed a petition for custody of five-month-old A. C. McFalls filed an answer and cross-claim for custody. The superior court appointed a guardian ad litem to represent the best interests of A. C. A report filed by the guardian ad litem found that both McFalls and the Onsagers are "fit, willing and appropriate individuals to care for [A. C.]" The guardian noted that McFalls' love for A. C. is evident and while he lacked "experience in caring for an infant child, he has made sure that the child seeks regular medical care, and received input from the child's pediatrician as to how to best care for her." She recommended, however, that custody of A. C. be transferred to the Onsagers because the "ability to be raised with a sibling can provide A. C. with a lifetime of benefits," the Onsagers have the ability to provide a two-parent household and the ability to provide A. C. with a mother figure "which will prove to be invaluable as she progresses through childhood and adolescence."

The superior court held a hearing which included the testimony of the parents, the guardian ad litem, a DFACS investigator, Karen Onsager, McFalls, and McFalls' partner. The parents expressed a desire to have A. C. returned to their custody, but

both had been incarcerated for possession of marijuana, bond jumping and violating probation, and did not have the means of taking care of A. C. The parents desired that A. C. remain with McFalls in the meantime. The mother stated that if she could not regain custody of A. C., "I'd like her to stay [with McFalls] so I can at least see her." Testimony was presented that both McFalls and the Onsagers were fit caregivers and financially able to care for A. C. Following the hearing, the superior court gave "substantial weight to the desire of the parents" for A. C. to remain in the custody of McFalls, and found that both the Onsagers and McFalls can provide a stable and caring environment for A. C. The court concluded that it is in the best interests of A. C. that the Onsagers be granted custody of the child, "especially in light of the experience of Karen Onsager as the primary caregiver for other children."

There was ample evidence in the record to support the superior court's award of custody of A. C. to the Onsagers, including evidence that the Onsagers had custody of A. C.'s older brother. While McFalls argues that the superior court failed to give substantial weight to the parents' choice, the court explained that even with giving substantial weight to the wishes of the parents for A. C. to remain in McFalls' custody, it nevertheless found that it is in A. C.'s best interest for custody to be

granted to the Onsagers.[1] Under these circumstances, we see no abuse of the superior court's discretion in granting custody of A. C. to the Onsagers and therefore affirm. See *Reed*, supra, 289 Ga. at 193-194.

*Judgment affirmed. Doyle, P. J. and Andrews, J., concur.*

---

[1]McFalls also argues that his temporary guardianship of A. C. had not been terminated by a court order. See OCGA § 29-2-8 (a). But the superior court's final custody order granting of custody of A. C. to the Onsagers had the effect of terminating the temporary guardianship.